**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NATASHA FORD, individually and on behalf of her minor child C.F. (Minor),**<br><br>Plaintiffs,<br><br>v.<br><br>**EF EXPLORE AMERICA, INC.; HOLIDAY CLARK, LLC; and U.S. SECURITY ASSOCIATES, INC.,**<br><br>Defendants. | Civ. No. 18-2800 (KM)<br><br>**OPINION & ORDER** |

**KEVIN MCNULTY, U.S.D.J.:**

    Natasha Ford, a citizen of Texas, brings this diversity action individually and on behalf of her child, C.F. (together, "Ford"). This matter comes before the court on the motion of defendant EF Explore America, Inc. ("EF") under 28 U.S.C. § 1404(a) to transfer venue to the U.S. District Court for the District of Massachusetts, pursuant to a contractual forum-selection clause. I find that the forum-selection clause is valid and enforceable as between EF and the plaintiff. The parties have failed, however, to consider the effect of the presence of two defendants who are not parties to the contract or its forum selection clause. Their presence might stand in the way of a transfer of venue that would otherwise be appropriate. Under recent Third Circuit case law, a different and rather complex analysis is required. I will therefore deny this motion without prejudice to refiling within 21 days. All defendants shall state their legal and factual positions on the motion to transfer. The parties will also be directed to clarify the facts pertinent to diversity jurisdiction, including the state of

1

incorporation and principal place of business of the defendant corporations, and the citizenship of all members of Holiday Clark, LLC.

C.F. was 13 years old at the time of the events. This action arises from an educational tour to the New York area that took place in June 2017. Defendant EF, located in Massachusetts, is in the business of organizing and sponsoring tours. Defendant Holiday Clark, LLC ("Holiday Inn"), operates a lodging facility in Clark, New Jersey, where the children and parent chaperones stayed overnight during the tour. Defendant U.S. Security Associates, Inc. ("U.S. Security"), apparently a Georgia corporation with offices in New Jersey,[1] provided a guard (the "Guard"; his precise name is unknown). The Guard's job was to ensure the security of the children while they were staying at the Holiday Inn. The complaint alleges that the Guard roused some of the boys in the middle of the night, tried to show C.F. pornography, touched him sexually through his clothing, and tried to get in the shower with him.

## A. Validity of forum selection clause as between Ford and EF

The issue here is whether venue of this case, or at least the portion of the case that is brought against EF, must be transferred to the U.S. District Court for the District of Massachusetts. EF moves to transfer the case pursuant to 28 U.S.C. § 1404(a), based on a forum-selection clause. That forum-selection clause was included in a Release and Agreement signed by Ford on behalf of herself and C.F. when they booked the tour on the website maintained by EF. The forum selection clause provides as follows:

> [T]his agreement shall be governed in all respects, and performance hereunder shall be judged, by the laws of the Commonwealth of Massachusetts. In the event of any claim, dispute or proceeding arising out of my relationship with EF, or any claim which in contract, tort, or otherwise at law or in equity

---

[1] EF states that it actually contracted for security services with a predecessor entity, McRoberts Protective Agency, Inc., which was acquired by U.S. Security in 2016, before the events in suit occurred. A copy of the contract between EF and McRoberts is at DE 5-5, p. 21. As it happens, this agreement, too, contains a Massachusetts forum selection clause for disputes arising between EF and McRoberts. This agreement states, by the way, that EF is a California corporation.

2

arises between the Released Parties, whether or not related to this agreement, the parties submit and consent to the exclusive jurisdiction and venue of the courts of the commonwealth of Massachusetts and of the United States District Court for the District of Massachusetts.

(Release and Agreement ¶ 17).[2]

EF says that a straightforward application of the forum selection clause dictates that it may be sued only in Massachusetts. Under *Atlantic Marine Construction Co. v. U.S. District Court*, __ U.S. __, 134 S. Ct. 568 (2013), the usual multifactor venue analysis is simplified when there is a forum-selection clause:

> Specifically, district courts (1) must give no weight to the forum preferred by "the party defying the forum-selection clause"; (2) must deem the private interests to "weigh entirely in favor of the preselected forum" because the parties agreed to the preselected forum and thereby waived the right to challenge it as inconvenient; and (3) must proceed to analyze only public interests. [*Atlantic Marine*, 134 S. Ct.] at 581-82. The Supreme Court explained that, with these modifications to the typical [28 U.S.C.] § 1404(a) analysis, district courts should enforce valid forum-selection clauses "[i]n all but the most unusual cases." *Id.* at 583.

*In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 (3d Cir. 2017), *cert. denied*, 138 S. Ct. 1288 (2018).

This is not that "most unusual case." The forum-selection clause—as far as it goes, *see infra*—is valid and enforceable.

Of course, a prerequisite to enforcement of any contractual provision is that there be a valid contract. Contrary to plaintiffs' argument, I do not find any procedural unfairness that would undermine the agreement itself. When Ms. Ford booked the tour online, the transaction was blocked from going forward unless and until she affirmatively checked a box agreeing to two contracts. Those contracts, available by clicking a link, were the Booking Conditions and the Release and Agreement that contained the forum-selection

---

[2] A copy of the Release and Agreement is at DE 5-5, p. 17.

3

clause. (DE 5-5) The consumer's attention would have been focused; this was not, *e.g.*, a routine consumer purchase, but the booking of a tour which cost $2000 or more. There are no indicia of coercion or unequal bargaining power.[3]

As noted in *Howmedica,* quoted *supra,* the forum preference of a plaintiff who agrees to a forum-selection clause is not entitled to weight. In addition, the private interests that usually figure in the venue analysis will not be considered.

Only public interests remain relevant. These may include "'the enforceability of the judgment'; 'the relative administrative difficulty in the two fora resulting from court congestion'; 'the local interest in deciding local controversies at home'; 'the public policies of the fora'; and 'the familiarity of the trial judge with the applicable state law in diversity cases.'" *Homedica,* 867 F.3d at 402 (quoting *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir. 1995)). As to those public interests, Ford offers little. I have nothing before me regarding the relative congestion of the Massachusetts and New Jersey federal courts. As to familiarity with state law, I note that the contract between Ford and EF provides for the application of Massachusetts, not New Jersey law, so this factor tilts toward transfer. There is a general interest in deciding local controversies at home, and the alleged tort occurred in New Jersey; that interest is offset, however, by the fact that both Ford and EF are out-of-state parties.

---

[3] Counsel for Ford cites *Hoffman v. Supplements Togo Mgmt., LLC,* 419 N.J. Super. 596, 607, 18 A.3d 210, 217 (App. Div. 2011), in which the state court declined to enforce a forum-selection clause because the plaintiff did not have "reasonable notice" of it. The circumstances, however, were far different. The reader of the website in *Hoffman* would not have seen the forum-selection clause unless she scrolled down and found it in a "submerged" location. By selecting an advertised product, the consumer would skip immediately to the "shopping cart," which did not contain the forum selection clause. Not so here. As noted in text, the Release and Agreement was not hidden, and the consumer could not proceed with the transaction unless she had affirmatively given her assent by checking a box. Indeed, these facts are similar to those in *Caspi v. Microsoft Network, L.L.C.,* 323 N.J. Super. 118, 122, 732 A.2d 528 (App.Div.), *certif. denied,* 162 N.J. 199, 743 A.2d 851 (1999). *Hoffman* approvingly cites *Caspi* as a case in which reasonable notice was given and the forum-selection clause was enforced.

4

Public policies of the states are a neutral factor. Ford cites New Jersey's "extraordinary" public interest in the protection of minors. In support, it cites statutory speed limits that apply in school zones. N.J. Stat. Ann. § 39:4-98. To me, New Jersey's interest seems not extraordinary, but fairly generic. It is true that the alleged abuse of this Texas plaintiff took place in New Jersey. Still, there is no reason to think that a Massachusetts forum would be any less solicitous of an out-of-state minor's safety. A transfer would not be likely to impair any public policy against the infliction of harm on children.[4]

In short, there are no unusual factors at play that would justify the court's setting aside this garden-variety forum selection clause.

### B. Effect of other defendants not subject to forum selection clause

Neither Holiday Inn nor U.S. Security, however, is a party to the Release and Agreement that contains the forum selection clause. No party discusses whether the presence of those nonsignatory codefendants affects the transfer-of-venue issue. It does.

---

[4] *Silvis v. Ambi Energy, L.P.*, 90 F. Supp. 3d 393 (E.D. Pa. 2015), cited by plaintiff, is distinguishable. It overrode a forum-selection clause, based on the unique ties of the local forum to the issues, which implicated Pennsylvania's "historical and ongoing" regulation of its electrical power markets. *Id.* at 399–400. New Jersey, for its part, seems to confine the public policy factor to specialized, New Jersey-specific areas such as the Franchise Practices Act. *See Cadapult Graphic Systems, Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000).

Ford cites pre-*Atlantic Marine* case law, stating that a forum-selection clause will not be enforced where (1) it is the product of fraud or overreaching; (2) enforcement would violate a strong public policy of the forum; or (3) enforcement would result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable. *See Cadapult Graphic Systems, Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000); *United Steele America Co. v. M/V Sanko Spruce*, 14 F. Supp. 2d 682, 686 (D.N.J. 1998). Although to some extent inconsistent with *Atlantic Marine* (they seem, for example, to consider private factors), these cases would not change the result, for the reasons stated in text, above. I would add only that the factor of convenience (strictly as between Ford and EF) does not weigh against transfer. The plaintiffs are from Texas, and defendant EF is in Massachusetts. Presumably, if this were a two-party case, there would be no particular inconvenience to plaintiffs in litigating the case in Massachusetts, as opposed to New Jersey. (Issues arising from the multiparty nature of the litigation will be addressed later. *See infra.*)

Last year, the U.S. Court of Appeals for the Third Circuit announced a complex "four-step framework" for deciding a change-of-venue motion when some, but not all, defendants are parties to a forum-selection clause. *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 403–05 (3d Cir. 2017), *cert. denied*, 138 S. Ct. 1288 (2018). Because *Howmedica* is fairly recent, I quote it at length, omitting footnotes and other material not essential to understanding:

> Step One: Forum-Selection Clauses. At the first step, the court assumes that Atlantic Marine applies to parties who agreed to forum-selection clauses and that, "[i]n all but the most unusual cases," claims concerning those parties should be litigated in the fora designated by the clauses. *Atl. Marine*, 134 S.Ct. at 583. . . .
>
> Step Two: Private and Public Interests Relevant to Non-Contracting Parties. Second, the court performs an independent analysis of private and public interests relevant to non-contracting parties, just as when adjudicating a § 1404(a) transfer motion involving those parties in the absence of any forum-selection clauses. . . . [C]ourts at Step Two should consider the private and public interests "of the parties who have not signed a forum-selection agreement." . . . If, at this juncture, the Step One and Step Two analyses point to the same forum, then the court should allow the case to proceed in that forum, whether by transfer or by retaining jurisdiction over the entire case, and the transfer inquiry ends there.
>
> Step Three: Threshold Issues Related to Severance. Third, if the Step One and Step Two analyses point different ways, then the court considers severance. *See* Fed. R. Civ. P. 21. In some cases, severance clearly will be warranted to preserve federal diversity jurisdiction; to cure personal jurisdiction, venue, or joinder defects; or to allow for subsequent impleader under Federal Rule of Civil Procedure 14. In such cases, the court should sever and transfer claims as appropriate to remedy jurisdictional and procedural defects. If only one severance and transfer outcome satisfies the constraints identified at this step, then the court adopts that outcome and the transfer inquiry ends. But if more than one outcome satisfies the threshold severance constraints, then the court continues to Step Four.

6

In other cases, severance is clearly disallowed, such as when a party is indispensable under Federal Rule of Civil Procedure 19(b). . . . In these cases, the court cannot sever, . . . and the case must continue with all parties present in a forum where jurisdiction and venue are proper as to the indispensable party, which could be either the originating district court or the court to which transfer is sought. If jurisdiction and venue are proper as to the indispensable party in only one of those courts, then the transfer inquiry ends there and the case must continue in that court. If, however, jurisdiction and venue are proper as to the indispensable party in both the originating court and the proposed transferee court, then, in deciding where the whole case should proceed, the court proceeds to Step Four.

Likewise, in cases where severance is neither clearly warranted nor clearly disallowed and is therefore committed to the court's discretion (such as when there are no indispensable parties or defects in jurisdiction, venue, or joinder), the court goes on to select the appropriate fora based on a combination of interests addressed at the next step.

Step Four: Efficiency and Non-Contracting Parties' Private Interests. Fourth, a district court exercises its discretion (which we will review for abuse of discretion) in choosing the most appropriate course of action, . . . but it measures its decision against two key sets of interests. On the one hand, the court considers efficiency interests in avoiding duplicative litigation, . . . taking into account case management techniques that can reduce inefficiencies accompanying severance, . . . as well as any other public interests that may weigh against enforcing a forum-selection clause . . . . On the other hand, the court also considers the non-contracting parties' private interests and any prejudice that a particular transfer decision would cause with respect to those interests.

In exercising its discretion to determine whether it should retain the case in its entirety, transfer the case in its entirety, or sever certain parties or claims in favor of another forum, the court considers the nature of any interests weighing against enforcement of any forum-selection clause; the relative number of non-contracting parties to contracting parties; and the non-contacting parties' relative resources, keeping in mind any jurisdiction, venue, or joinder defects that the court must resolve. Only if it determines

7

that the strong public interest in upholding the contracting parties' settled expectations is "overwhelmingly" outweighed by the countervailing interests can the court, at this fourth step, decline to enforce a valid forum-selection clause.

*Howmedica*, 867 F.3d at 403–05. *See also Piazza Family Trust v. Ciarrocchi*, 2017 WL 5146007 (E.D. Pa. Nov. 6, 2017) (applying *Howmedica*, severing claims subject to forum-selection clause, and transferring them to the selected forum).[5]

No party has addressed the *Howmedica* issue, *i.e.*, the application of a forum-selection clause agreed to by some but not all parties. In this opinion, I have in effect decided *Howmedica* step one: The forum-selection clause is valid and enforceable as between Ford and EF, the parties who agreed to it. But I can go no farther. I will not attempt to extract findings on *Howmedica* steps two, three, and four from a presentation that was submitted without those factors in mind. Instead, I will order as follows:

## ORDER

1. The forum selection clause is deemed valid and enforceable as between Ford and EF.
2. EF's motion to transfer (DE 5) is nevertheless denied without prejudice. EF may, if it wishes, refile its motion to transfer, addressing the *Howmedica* factors, within 21 days.
3. If EF does refile, defendants Holiday Clark, LLC, and U.S. Security Associates, Inc., shall file a response stating their legal and factual positions on EF's renewed motion.
4. In any event, within 21 days each defendant shall file a brief declaration or certification stating the facts relevant to diversity jurisdiction. These include the state of incorporation and principal place of business of each corporation, and the citizenship of each member of the LLC, including corporate members.

---

[5] Where both fora are within the federal court system, *Atlantic Marine* prescribes a transfer of venue, rather than the alternative remedy of dismissal. 571 U.S. at 60.

5. EF's request for the alternative relief of dismissal is denied.

_____
**KEVIN MCNULTY, U.S.D.J.**

Date: November 19, 2018