UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NATASHA FORD, individually and on behalf of her minor child C.F. (Minor),**<br><br>**Plaintiffs,**<br><br>v.<br><br>**EF EXPLORE AMERICA, INC.; HOLIDAY HOSPITALITY FRANCHISING, INC.; HOLIDAY CLARK, LLC; U.S. SECURITY ASSOCIATES, INC.,**<br><br>**Defendants.** | Civ. No. 18-2800 (KM)<br><br>OPINION |

### KEVIN MCNULTY, U.S.D.J.:

Natasha Ford brings this diversity action individually and on behalf of her child, C.F. (together, "Ford"). The action arises from an educational tour to the New York area that took place in June 2017. Defendant EF Explore America, Inc. ("EF"), located in Massachusetts, is in the business of organizing and sponsoring tours. Defendant Holiday Hospitality Franchising, Inc., states that it is a franchising entity. Holiday Clark, LLC operates a lodging facility in Clark, New Jersey. (These two defendants are collectively referred to as "Holiday.") Defendant U.S. Security Associates, Inc. ("U.S. Security") provided a guard. The guard's job was to ensure the security of the children while they were staying at the Holiday Inn in Clark, New Jersey. The complaint alleges that the guard roused some of the boys in the middle of the night, tried to show

1

pornography to C.F., who was 13 years old at the time, touched him sexually through his clothing, and tried to get in the shower with him.[1]

This matter comes before the court on the renewed motion (DE 53) of defendant EF under 28 U.S.C. § 1404(a) to dismiss or transfer venue to the U.S. District Court for the District of Massachusetts, pursuant to a contractual forum-selection clause. For the reasons stated herein, the motion to transfer venue will be granted.

In a prior Opinion & Order ("Op.", DE 49) I found that the forum-selection clause was valid and enforceable as between EF and Ford. I also found, however, that the papers had failed to discuss the effect of the presence of other defendants who are not parties to the contract or its forum selection clause. Under recent Third Circuit case law, a different and potentially complex analysis is required in that situation. *See In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402 (3d Cir. 2017), *cert. denied,* 138 S. Ct. 1288 (2018). I therefore denied the motion without prejudice to refiling within 21 days. In doing so, I ordered *all* defendants to state their legal and factual positions on the motion to transfer under the *Howmedia* factors.

EF refiled its motion (DE 53), this time with a discussion of the *Howmedica* factors. The plaintiffs have filed a response (DE 60), and EF has filed a Reply. (DE 61) I heard oral argument in open court on July 31, 2019.

The remaining defendants did not, as ordered, make separate submissions stating their positions on the motion, impeding the Court's analysis of the relevant factors. In response to my questioning at oral argument, however, counsel for the Holiday defendants and U.S. Security stated that they do not oppose transfer. Both committed on behalf of their clients that, if the case were transferred, they would submit to the jurisdiction

---

[1] Plaintiffs are citizens of Texas. I directed the defendants to clarify their citizenship, to confirm diversity jurisdiction. The defendants have filed submissions stating that they are citizens of states other than Texas. (*See* DE 54, 55, 56.)

of the U.S. District Court for the District of Massachusetts and would not contest personal jurisdiction or service.

Based on that concession and an analysis of the relevant factors, I will grant the motion to transfer venue of the entire case to the District of Massachusetts.[2]

## DISCUSSION

Familiarity with my prior Opinion (DE 49) is assumed; this Opinion should be read as a supplement to it. I have already found the Massachusetts forum-selection clause in the contract between Ford and EF to be valid and enforceable as between those two parties.[3] (Op. pp. 2–5) The remaining issue is whether that clause should be overridden based on the presence of other defendants who were not parties to that contract. For the reasons stated herein, I answer that question in the negative and grant the motion to transfer venue to the District of Massachusetts.

The issue is governed by the "four-step analysis" dictated by *Howmedica, supra.* In my prior Opinion I quoted the steps thus:

> Step One: Forum-Selection Clauses. At the first step, the court assumes that Atlantic Marine applies to parties who agreed to forum-selection clauses and that, "[i]n all but the most unusual

---

[2] All other things being equal, it would have been preferable to transfer the case earlier, so that a single court could have supervised all aspects of the case. Resolution of the venue issue was delayed, however, by EF's failure to address the *Howmedica* factors (requiring the motion to be refiled) and the codefendants' failure to file papers, despite the court's order to do so.

[3] The forum selection clause provides as follows:

[T]his agreement shall be governed in all respects, and performance hereunder shall be judged, by the laws of the Commonwealth of Massachusetts. In the event of any claim, dispute or proceeding arising out of my relationship with EF, or any claim which in contract, tort, or otherwise at law or in equity arises between the Released Parties, whether or not related to this agreement, the parties submit and consent to the exclusive jurisdiction and venue of the courts of the commonwealth of Massachusetts and of the United States District Court for the District of Massachusetts.

(Release and Agreement ¶ 17, DE 5-5, p. 17).

3

cases," claims concerning those parties should be litigated in the fora designated by the clauses. *Atl. Marine*, 134 S.Ct. at 583. . . .

Step Two: Private and Public Interests Relevant to Non-Contracting Parties. Second, the court performs an independent analysis of private and public interests relevant to non-contracting parties, just as when adjudicating a § 1404(a) transfer motion involving those parties in the absence of any forum-selection clauses. . . . [C]ourts at Step Two should consider the private and public interests "of the parties who have not signed a forum-selection agreement." . . . If, at this juncture, the Step One and Step Two analyses point to the same forum, then the court should allow the case to proceed in that forum, whether by transfer or by retaining jurisdiction over the entire case, and the transfer inquiry ends there.

Step Three: Threshold Issues Related to Severance. Third, if the Step One and Step Two analyses point different ways, then the court considers severance. *See* Fed. R. Civ. P. 21. In some cases, severance clearly will be warranted to preserve federal diversity jurisdiction; to cure personal jurisdiction, venue, or joinder defects; or to allow for subsequent impleader under Federal Rule of Civil Procedure 14. In such cases, the court should sever and transfer claims as appropriate to remedy jurisdictional and procedural defects. If only one severance and transfer outcome satisfies the constraints identified at this step, then the court adopts that outcome and the transfer inquiry ends. But if more than one outcome satisfies the threshold severance constraints, then the court continues to Step Four.

In other cases, severance is clearly disallowed, such as when a party is indispensable under Federal Rule of Civil Procedure 19(b). . . . In these cases, the court cannot sever, . . . and the case must continue with all parties present in a forum where jurisdiction and venue are proper as to the indispensable party, which could be either the originating district court or the court to which transfer is sought. If jurisdiction and venue are proper as to the indispensable party in only one of those courts, then the transfer inquiry ends there and the case must continue in that court. If, however, jurisdiction and venue are proper as to the indispensable party in both the originating court and the proposed transferee court, then, in deciding where the whole case should proceed, the court proceeds to Step Four.

4

>    Likewise, in cases where severance is neither clearly warranted nor clearly disallowed and is therefore committed to the court's discretion (such as when there are no indispensable parties or defects in jurisdiction, venue, or joinder), the court goes on to select the appropriate fora based on a combination of interests addressed at the next step.
>
>    <u>Step Four: Efficiency and Non-Contracting Parties' Private Interests</u>. Fourth, a district court exercises its discretion (which we will review for abuse of discretion) in choosing the most appropriate course of action, . . . but it measures its decision against two key sets of interests. On the one hand, the court considers efficiency interests in avoiding duplicative litigation, . . . taking into account case management techniques that can reduce inefficiencies accompanying severance, . . . as well as any other public interests that may weigh against enforcing a forum-selection clause . . . . On the other hand, the court also considers the non-contracting parties' private interests and any prejudice that a particular transfer decision would cause with respect to those interests.
>
>    In exercising its discretion to determine whether it should retain the case in its entirety, transfer the case in its entirety, or sever certain parties or claims in favor of another forum, the court considers the nature of any interests weighing against enforcement of any forum-selection clause; the relative number of non-contracting parties to contracting parties; and the non-contacting parties' relative resources, keeping in mind any jurisdiction, venue, or joinder defects that the court must resolve. Only if it determines that the strong public interest in upholding the contracting parties' settled expectations is "overwhelmingly" outweighed by the countervailing interests can the court, at this fourth step, decline to enforce a valid forum-selection clause.

*Howmedica*, 867 F.3d at 403–05 (citing *Atlantic Marine Construction Co. v. U.S. District Court*, 571 U.S. 49, 134 S. Ct. 568 (2013)). Where, as here, the competing fora are both within the federal court system, *Atlantic Marine* prescribes a transfer of venue, rather than the alternative remedy of dismissal. 571 U.S. at 60.

Based on the submissions, as supplemented by oral argument, I will undertake an analysis of the four *Howmedica* steps.

*1. Forum Selection Clauses.*

In my earlier Opinion, after weighing the necessary factors, I found that the Massachusetts forum selection clause was valid and enforceable as between the contracting parties, EF and Ford. The wording is clear; there are no indicia of procedural unfairness that would invalidate the contract; there were no particular public interest factors regarding the suitability of either court; the relevant public policy, *i.e.*, protection of children, would not seem to differ as between the two states; by contract, Massachusetts law would apply; and the desirability of deciding local issues here in New Jersey was offset by the fact that neither party is a New Jersey citizen.

Now EF stresses that this was not the only forum-selection clause. EF's contracts with its codefendants also contained Massachusetts forum-selection clauses.

McRoberts Protective Agency (acquired by defendant U.S. Security prior to the tour) signed a "Security Service Agreement" with EF dated November 2, 2015. (DE 53-2 pp. 5–13) The term of the agreement runs from October 15, 2015 through December 31, 2017, encompassing the June 2017 tour at issue. It provides for the application of Massachusetts law, and contains a forum selection clause which reads as follows:

> In the event of any claim, dispute or proceeding arising out of the relationship of the Coach Company[4] and EF, or any claim which in contract, tort, or otherwise at law or in equity arises between the parties, whether or not related to this agreement, the parties submit and consent to the exclusive jurisdiction of the court of the Commonwealth of Massachusetts and of the United States District Court for the District of Massachusetts.

(DE 53-2 p. 9)

---

[4] Possibly a slip. McRoberts is referred to in this agreement as the "Security Company."

6

Holiday Clark signed a "Hotel Service Agreement" with EF on December 8, 2016. (DE 53-2 pp. 15–23) Its term runs from January 1, 2017 through December 31, 2018, encompassing the June 2017 tour at issue. It, too, provides for the application of Massachusetts law, and contains a forum selection clause which reads as follows:

> In the event of any claim, dispute or proceeding arising out of the relationship of the Hotel and EF, or any claim which in contract, tort, or otherwise at law or in equity arises between the parties, whether or not related to this agreement, the parties submit and consent to the exclusive jurisdiction of the court of the Commonwealth of Massachusetts and of the United States District Court for the District of Massachusetts.

(DE 53-2 p. 20)

EF lumps these forum-selection clauses together with the EF/Ford clause, and says they should all simply be enforced. But Holiday Clark and U.S. Security were here entering into contracts with EF, not with Ford. Holiday Clark and U.S. Security, by agreement *with EF*, could not guarantee a Massachusetts forum for claims brought against them by Ford, a third party. Still, this stage of the *Howmedica* focuses on *their* arguments against going along for the ride as a result of the EF/Ford agreement. And they have represented that they have no objection.

   2. *Private and Public Interests Relevant to Non-Contracting Parties.*

   a. **Private interests**.

   Private interests to be balanced relate to "the convenience of the parties and witnesses." 28 U.S.C. § 1404(a). They therefore include the "plaintiff's forum preference as manifested in the original choice"; "the defendant's preference"; "whether the claim arose elsewhere"; "the convenience of the parties as indicated by their relative physical and financial condition"; "the convenience of the witnesses"; and "the location of books and records," . . . as well as "all other practical problems that make trial of a case easy, expeditious and inexpensive," . . . .

*Howmedica*, 867 F.3d at 401. In this context, however, that language must be modified and adapted. We are no longer looking strictly at the interests of

7

plaintiff versus those of the defendant; rather, "courts at Step Two should consider the private and public interests of the parties who have *not* signed a forum-selection agreement." *Id.* at 404 (citations omitted).

*Forum preference.* The non-parties to the Ford/EF agreement, *i.e.*, Holiday and U.S. Security, although invited to do so, did not articulate any interest in avoiding the transfer of venue. And at oral argument, these parties acceded to a Massachusetts forum.

Certainly, these defendants can claim no general aversion to litigating in Massachusetts; the forum selection clauses in their agreements with EF testify to that. *See* pp. 6–7, *supra*. It is true, moreover, that there are cross-claims among the codefendants, including EF. (DE 7, 27) Based on these additional forum-selection clauses, EF could very likely require that such cross-claims between itself and Holiday Clark or U.S. Security be litigated in Massachusetts. So any incremental hardship to Holiday or U.S. Security would likely turn out to be negligible.

*Access to sources of proof.* Potential witnesses such as the plaintiff, the plaintiff's medical providers, and other members of the tour group all seem to be located in Texas. EF's corporate employee witnesses would be in Massachusetts. The hotel itself (*i.e.*, employees of Holiday Inn Clark) would be in New Jersey, as would Mr. Mayer.[5] The employees of the other defendants, U.S. Security and Holiday Hospitality Franchising, LLC, would probably not be located in either New Jersey or Massachusetts, though this is less clear. No difficulties in obtaining the presence of witnesses are cited. Depositions and documents may still be obtained in New Jersey, even if the litigation is no

---

[5]   Holiday has named an individual, Jeffrey W. Mayer, as a third-party defendant. (DE 7, 24) According to EF, Mayer "is the perpetrator and is believed to be incarcerated" in New Jersey. (EF Brf. 1 n.2) Mayer was an employee of U.S. Security. He has been served (DE 31), but has not answered or entered an appearance. The Clerk has entered default. (Entry following DE 46) U.S. Security subsequently filed a cross-claim for contribution against Mr. Mayer. (DE 66) Plaintiff Ford, however, has not sued Mayer.

longer here. To the extent this factor may favor New Jersey, it does so only mildly.

*Place claim arose.*

The claim arose in New Jersey. For most of the defendants, it is not easier or cheaper to litigate it here. The plaintiff, medical witnesses, and tour participants are concentrated in Texas. The Holiday Inn itself is located here. This factor, to the extent it may be seen as favoring New Jersey, does so only mildly—and again, the affected defendants themselves do not object to a transfer.

*Location and financial condition of parties.*

Given the geographic dispersal of parties, there is no forum that will be home to everyone. The only New Jersey party who has appeared in the case is Holiday Clark itself. There is no evidence that its resources are inferior to those of EF, a tour company. The cost of travel to Massachusetts is not prohibitive. The parties point to no particular need for a visit to the premises, as the layout of the hotel room (to the extent relevant) may easily be established by a diagram or photo.

The remaining parties, all out-of-staters, would not suffer any particular inconvenience from litigating in Massachusetts as opposed to New Jersey. And it bears repeating that all—including Holiday Inn—signed agreements expressing their willingness to litigate in Massachusetts. It is hard to credit any argument that it is not inconvenient to litigate against EF in Massachusetts, but would be inconvenient to litigate against Ford there.

*Other practicalities.* Massachusetts is not remote; it is several hours away from New Jersey by Amtrak or automobile. Transfer would not impose any significant incremental burden on this Texas plaintiff or EF's codefendants.

**b. Public Interests.**

*Enforcement of judgment.* There is no reason to think that enforcement of any judgment would be unduly complicated by a transfer to Massachusetts. The lead defendant, EF, is situated in Massachusetts, and the enforceability of a judgment against EF should be of concern. The only New Jersey corporate

party is Holiday Clark, LLC, which ran the hotel. All other parties are from states other than New Jersey and Massachusetts.

*Court congestion.* The Administrative Office of the Courts has declared the District of New Jersey to be in a state of judicial emergency, with weighted filings of 903 cases per judgeship, the second highest in the nation. Of 17 allocated judgeship slots, 6 are vacant. https://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-emergencies. The District of Massachusetts fortunately is not in a similar position. *See id.* This factor favors transfer.

*Local interests of the fora.* The acts are alleged to have occurred in New Jersey, and the hotel defendant is in New Jersey, so this state has some interest in deciding local controversies "at home." On the other hand, New Jersey is not the *plaintiff's* "home"; the plaintiff is a Texan, so New Jersey does not have a direct interest in compensating one of its injured citizens. Most of the other parties are likewise from other states. EF, the lead defendant, is located in Massachusetts, which has an interest in regulating the practices of in-state businesses.

*Public policy.* The parties have not pointed to any difference between these two fora as to their policies in relation to sexual abuse of minors.

*Familiarity of trial judge with applicable law.* The case—or at least the primary dispute between Ford and EF—is by contract governed by Massachusetts law. A Massachusetts judge would obviously have greater familiarity with local law. It may well be, as stated at oral argument, that the issues between Ford and the other defendants are governed by the law of New Jersey. If so, then either forum would be in the position of applying a mixture of local and out-of-state law.

Because steps 1 and 2 favor transfer, I need not carry the analysis any farther. Transfer is appropriate.[6]

---

6     For what it is worth, however, steps three and four would not alter the result.

## CONCLUSION

For the foregoing reasons, the renewed motion (DE 53) of defendant EF Explore America, Inc., under 28 U.S.C. § 1404(a) to transfer venue to the District of Massachusetts, pursuant to a contractual forum-selection clause, is GRANTED.

Dated: July 31, 2019

KEVIN MCNULTY, U.S.D.J.

---

Severance is not required to preserve jurisdiction or avoid defects of joinder. Ford points to the difficulty of suing the individual, Mayer, in Massachusetts. But Ford has not sued Mayer, and the parties who have—U.S. Securities and Holiday—do not oppose transfer. I add that Mayer, a State prisoner who has defaulted and has not been demonstrated to possess assets, may not have much bearing on the outcome of the case, except perhaps as a deposition or trial witness. The alternative of severing and transferring the case against EF while retaining the rest of the case in New Jersey is seemingly the worst alternative of all. It would require this tort victim to fight an expensive two-front battle far from home.

Finally, largely for the reasons already expressed above, there is no "overwhelming" interest sufficient to overcome the forum-selection clause.

11